Roosevelt N. Nesmith, Esq. (008271997)
**LAW OFFICE OF ROOSEVELT N. NESMITH LLC**
363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
Tel: (973) 259-6990
Fax: (866) 848-1368
*roosevelt@nesmithlaw.com*

***Counsel for Plaintiff and the***
***Putative Collective and Classes***
***[additional counsel on signature page]***

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| RENIER GONZALEZ,<br>individually and on behalf of all<br>others similarly situated, | |
| Plaintiff, | **COMPLAINT** |
| | Class and Collective Action |
| -vs- | Jury Trial Demanded |
| LYFT, INC., | |
| Defendant. | |

### <u>INTRODUCTION</u>

Plaintiff Renier Gonzalez ("Gonzalez" or "Plaintiff"), individually and on behalf of all other similarly situated persons, files this Class and Collective Action Complaint against Lyft, Inc. ("Lyft" or "Defendant"), seeking all available relief for unpaid minimum wages, unpaid overtime wages and unreimbursed business expenses pursuant to the Fair Labor Standards Act 29 U.S.C. § 201, *et seq.* ("FLSA"), the New Jersey Wage and Hour Law, N.J.S.A §. 34:12-56, *et seq*. and the New Jersey Wage and Hour Regulations N.J.A.C. § 12:56-5.1, *et seq.* (collectively, with the New Jersey Wage and Hour Law, "NJWHL").

## NATURE OF THE ACTION

1.      Plaintiff alleges, on behalf of himself and all similarly situated, current and former Lyft drivers engaged in interstate commerce, and who elect to opt into this action pursuant to the FLSA (hereinafter "Collective Active Members"), that they are entitled to *inter alia*: (1) unpaid minimum wages; (2) unpaid overtime wages for hours worked above forty (40) in a work week, as required by law; (3) unreimbursed business expenses; and (4) and liquidated damages pursuant to the FLSA.

2.      Plaintiff also brings this action under NJWHL pursuant to Fed. R. Civ. P. 23, on behalf of himself and all similarly situated current and former Lyft drivers in the State of New Jersey engaged in interstate commerce that they are entitled to *inter alia,* unpaid minimum wage, social security and unemployment contributions and credits, unpaid overtime wages for hours worked above forty (40) in a work week, and unreimbursed business expenses as required by the NJWHL.

3.      Defendant violated the FSLA and the NJWHL by misclassifying Plaintiff and similarly situated employees as independent contractors and failing to pay these employees for all the hours worked at minimum wage after work-related expenses, by failing to pay them overtime wages and failing to reimburse their business-related expenses pursuant to Defendant's company policy for employees.  Plaintiff and all persons similarly situated, are entitled to unpaid wages from Defendant for all hours worked by them at minimum wage after payment of work-related expenses, as well as unpaid overtime wages for hours in excess of forty (40) hours worked per work week and unreimbursed business expenses pursuant to company policy.

4.      This Court has jurisdiction over Plaintiff's FSLA claims pursuant to 29 U.S.C. § 216 (b) and 28 U.S.C. § 1331.

5.     This Court has jurisdiction over Plaintiff's NJWHL claims pursuant to 28 U.S.C. § 1332(d) and the Class Action Fairness Act, 28 U.S.C. §§ 1332, 1453 and 1711-1715, and 28 U.S.C. § 1367.  The parties are diverse and, on information and belief, the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

6.     Plaintiff is a citizen of a State different from that of Defendant.

7.     Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this District.

8.     Plaintiff resides in this district.

9.     Defendant regularly conducts business in this district.

## THE PARTIES

10.     Plaintiff RENIER GONZALEZ is an individual residing in Jersey City, New Jersey.  Plaintiff has worked as a driver engaged in interstate commerce for Lyft from October 2017 to the present.  While working for Lyft, Plaintiff has engaged in interstate commerce by driving passengers from New Jersey to New York City and from New Jersey to New York airports and picking up and dropping off passengers from Newark International Airport and New Jersey train stations.

11.     In 2017, Plaintiff completed 92 trips and drove 763 miles for Lyft.  Lyft paid Plaintiff $1,068.80 for his work on its behalf.  Plaintiff was not reimbursed for additional out-of-pocket expenses necessarily incurred on the job and required by Lyft, including return trip tolls, vehicle maintenance, gas, and insurance which totaled more than $408.17.  Plaintiff' net pay from Lyft was $660.63.  As a result of Lyft's failure to reimburse Plaintiff for all work-related expenses, Plaintiff did not receive minimum wage for all hours worked.  Plaintiff also worked in excess 40 hours during a workweek without receiving overtime compensation.

12.    In 2018, Plaintiff drove 334.23 miles for Lyft.  Lyft paid Plaintiff $879.98 for his work on its behalf.  Plaintiff was not reimbursed for additional out-of-pocket expenses necessarily incurred on the job and required by Lyft, including return trip tolls, vehicle maintenance, gas, and insurance which totaled more than $178.81.  Plaintiffs net pay from Lyft was $701.17.  As a result of Lyft's failure to reimburse Plaintiff for all work-related expenses, Plaintiff did not receive minimum wage for all hours worked.

13.    Defendant Lyft Technologies, Inc. is a transportation services company that provides drivers who can be hailed and dispatched through a mobile phone application.  Lyft is headquartered in San Francisco, California.

## FACTUAL ALLEGATIONS

14.    Pursuant to Defendant's policy, pattern and/or practice, Defendant failed to pay Plaintiff and all similarly situated employees proper minimum wage, and failed to reimburse his business-related expenses per the terms of company policy.

15.    The FLSA and NJWHL require employers to provide their employees with sufficient reimbursements for employment related expenses ("kickbacks") to ensure that employees' hourly wages equal or exceed the required minimum wage after such expenses are counted against the hourly wages.  Defendant systematically under-reimbursed its drivers for vehicular wear and tear, gas, tolls, airport fees, and other driving-related expenses, thereby ensuring that the majority of Defendant's drivers are effectively paid well below the minimum wage.

16.    At all times relevant hereto, Defendant has been an employer within the meaning of Section 3(d) of the FLSA.

17.    At all times relevant herein, Defendant has been an enterprise within the meaning of Section 3(r) of the FLSA and an enterprise engaged in commerce, including interstate commerce, within the meaning of Section 3(s)(1) of the FLSA because it has employees engaged in commerce, including interstate commerce.

18.    Defendant has had a gross volume of sales made or business done of at least $500,000 per annum.

19.    At all times relevant herein, Plaintiff and others similarly situated were engaged in interstate commerce as Lyft drivers.  Indeed, Lyft drivers in the tri-state area of New Jersey regularly engage in interstate commerce which is defined as trade, traffic, or transportation in the United States— (1) between a place in a State and a place outside of such State (including a place outside of the United States); (2) between two places in a State through another State or a place outside of the United States; or (3) between two places in a State as part of trade, traffic, or transportation originating or terminating outside the State or the United States, including, but not limited to, instate airports, train stations and bus depots.

20.    Because Plaintiff and other similarly situated Lyft drivers are or were engaged in interstate commerce on behalf of Lyft, the arbitration clause in the Lyft Driver Agreement is unenforceable. *See New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019).

21.    Defendant issued paychecks to Plaintiff and all similarly situated employees during their employment.

22.    Defendant directed the work of Plaintiff and similarly situated employees and benefitted from work performed that Defendant suffered or permitted from them.

23.    Plaintiff and others similarly situated were not paid minimum wage for all hours worked, and Plaintiff and others similarly situated worked in excess of 40 hours per work week

without receiving overtime compensation, as required by the FSLA, the NJWHL, and other applicable local, state and federal wage and hour laws.

**Lyft Has Misclassified Its Drivers as Independent Contractors**

24.     Defendant has tried to shield itself from liability for its blatant minimum wage violations by misclassifying its drivers as independent contractors.  Lyft drivers, however, are employees.  They are required to follow a litany of detailed requirements imposed on them by Lyft and they are graded, and subject to termination, based on their failure to adhere to these requirements (such as rules regarding their conduct with customers, their ability to reject rides, the cleanliness of their vehicles, their timeliness in picking up customers and taking them to their destination, what they are allowed to say to customers, etc.).  Lyft thus supervises the performance of drivers' work according to criteria set by Lyft.

25.     Lyft controls the hours and locations worked by the drivers via the Lyft Driver App.  Lyft will automatically log out the driver from the Driver App after 14 hours of work and not allow them to log back onto it for at least six hours, preventing the driver from working during that period.  Lyft has the ability to deactivate its Driver App at any time; making it impossible for the driver to work while it is deactivated.  When a New Jersey Lyft driver enters New York, Defendant prevents the driver from logging into the Driver App, thus making it impossible for the New Jersey Lyft driver to obtain a return fare back to New Jersey.

26.     Lyft states in its Driver Agreement that it may immediately terminate the Agreement or deactivate the driver's User Account in the event the driver engaged in Lyft-defined Restricted Activities, if the driver has not fulfilled Representations, Warranties and Agreements Lyft requires the drivers make as a condition of employment, or for any other breach Lyft determines to be a material term of the Agreement.  Lyft also reserves the right to terminate

the Agreement and deactivate the driver's account if the driver falls below Lyft's performance rating or cancellation threshold.

27.     Lyft requires its drivers to use electronic mobile devices, such as cell phones, with cellular service to access the Driver App.  Lyft does not reimburse drivers for the cost and maintenance of the driver's mobile device and the necessary wireless data plan.

28.     Lyft controls the method of pay for the drivers and sets the fare for each ride. Lyft prohibits drivers from setting rates of pay for their services; rather, their rates are determined by Lyft.  Lyft calculates the compensation paid to drivers from its "base fare or pickup fare amount plus incremental amounts based on actual time and distance of the ride, as measured by Lyft."  Lyft varies the base fare, pickup fare, and/or time and distance amounts based on the market where the driver provided the ride, the date the driver applied for, or was approved, as a Lyft driver, the type of vehicle the driver uses, and the type of Lyft service provided by the driver.  Lyft reserves the right to change its base fare, pickup fare, and/or time and distance amounts at its discretion.  Lyft also reserves the right to adjust the fare for a particular instance of transportation services if the driver takes an inefficient route, *i.e.*, a route different than the one provided by Lyft on the Driver App.

29.     Lyft controls the work and directs the manner in which the drivers perform their work.  Via the Lyft Driver App, Lyft provides its drivers with the only instrumentality by which a driver can perform services for Lyft.   Lyft issues each of its drivers a Driver ID.  The Driver ID enables the driver to access and use the Driver App on a hand held electronic device or cell phone.  Through the Driver App, Lyft sets the passenger pick up location.  Lyft only provides the driver with the location of the passenger for pick up, and does not disclose the destination of the passenger, until the pickup has been made.  If the Lyft driver declines the ride once the

destination is provided, Lyft punishes the driver by deactivating the Driver App., precluding new pickups during the punishment time period.

30.     Lyft tracks each driver's location on the Driver App and recommends that the driver follow the route provided on the Driver App.  If the driver does not follow the route provided by Lyft on the Driver App, the driver's fare will be reduced if the alternate route takes longer.

31.     Lyft also requires that its drivers review introductory videos and periodically review videos regarding company safety procedures.  Lyft requires that drivers review the videos within a timeframe set by the company.  If the drivers do not view the videos by the Lyft deadline, it deactivates the Driver App.  Lyft does not compensate its drivers for the time spent watching the company videos.

32.     Lyft thus maintains control, oversight, and discretion over its operations, including the work of Plaintiff and similarly situated drivers.

33.     Lyft is in the business of providing transportation servicers to passengers, and that is the service that Plaintiff and the other Lyft drivers provide.  The drivers' servicers are fully integrated into Lyft's business, and without the drivers, Lyft would not exist.

34.     Plaintiff, the Collective Action Members and the New Jersey Class Members, performed their work in the normal course of Lyft's business and their work was integrated into Lyft's business.

35.     Defendant's improper and illegal, company-wide policy, pattern and/or practice of mischaracterizing Defendant's labor force as "independent contractors" improperly reduced Defendant's labor cost, thereby fraudulently increasing the appearance of Defendant's profitability.

36.     Defendant's company-wide policy, patterns and/or practice of misclassifying its employees as independent contractors was knowing and intentional.

37.     Pursuant to a centralized, company-wide policy, pattern and/or practice, Defendant misclassified Plaintiff and other similarly situated current and former employees, as independent contractors exempt from coverage of the minimum wage and overtime provisions of the FLSA and the NJWHL.

### Lyft Fails to Reimburse Its Drivers For Work-Related Expenses Required by Lyft

38.     Throughout the relevant time period, Lyft has required its drivers to maintain and provide a safe, clean, functioning, insured and legally-operable automobile to make deliveries. Lyft has also required its drivers to bear the "out-of-pocket" costs associated with their vehicles, including vehicle maintenance and repairs, insurance, and gas.

39.     The Internal Revenue Service ("IRS") has calculated and published a standard mileage reimbursement rate ("IRS rate") for businesses and employees to use in computing the minimum deductible costs of operating an automobile for business purposes.  In 2017, the IRS rate was $0.53.5 per mile.  In 2018, the IRS rate was $0.54.5 per mile.  As of January 1, 2019, the IRS rate is $0.58 per mile.

40.     Thus, during the relevant period, the actual "out-of-pocket" costs that Lyft's drivers paid to provide a safe, functioning, insured and legally-operable automobile was a minimum of $0.53.5 per mile and a maximum of $0.58 per mile.

41.     Plaintiff and other Lyft drivers were paid per ride at rates above the hourly minimum wage.  However, the rate per ride was not sufficient to offset Plaintiff's and other Lyft drivers' actual "out-of-pocket" costs incurred and thus, netted out to be less than minimum wage for all hours on the job.

42.     By way of illustration, during the week of October 30, 2017 to November 5, 2017, Plaintiff worked 9.3 hours for Lyft.  During that time period he drove 17.78 miles for Lyft.  Lyft paid Plaintiff $45.22 for his work on its behalf.  Lyft did not reimburse him for additional out-of-pocket expenses necessarily incurred on the job and required by Lyft, including return trip tolls, vehicle maintenance, gas, and insurance, which totaled more than $9.51.  Plaintiff's net pay from Lyft was $35.71.  As a result of Lyft's failure to reimburse Plaintiff for all work-related expenses, Plaintiff did not receive minimum wage for all hours worked.

43.     Plaintiff also was not compensated for the overtime hours he worked for Lyft. For example, during the week of October 16, 2017 to October 22, 2016, Plaintiff worked 46 hours for Lyft.  During that time period he drove 246.25 miles for Lyft.  Lyft paid Plaintiff $328.29 for his work on its behalf.   Plaintiff was not reimbursed for additional out-of-pocket expenses necessarily incurred on the job and required by Lyft, including return trip tolls, vehicle maintenance, gas, and insurance which totaled more than $131.74.  Plaintiff did not receive minimum wage for his hours worked up to 40 hours during that calendar week, and did not receive overtime compensation for the hours he worked in excess of 40 hours during that week.

44.     As a result, Lyft has underpaid Plaintiff and its other drivers and fails to pay minimum wage for all hours worked after deduction of the work-related expenses.

45.     Plaintiff, the Collective Action Members, and the New Jersey Class also worked in excess of 40 hours per work week without being paid overtime wages in violation of the FLSA the NJWHL and other local and state wage and hour laws.

46.     The number of hours Plaintiff and other members of the Class worked per week can be ascertained from Defendant's records, including the trip logs maintained on the Lyft Driver App.

47.     Defendant, via the Lyft Driver App, assigned all of the work that Plaintiff, the Collective Action Members, and the New Jersey Class Members performed, and Defendant is aware of all of the work that they have performed.

## FLSA COLLECTIVE ACTION ALLEGATIONS

48.     Pursuant to 29 U.S.C. §§ 207 and 216(b), Plaintiff seeks to prosecute his FLSA claim as a Collective Action on behalf of all individuals who during the relevant time period are or were Lyft drivers in the United States classified as "independent contractors" and (a) who drove across state lines to pick up or transport passengers to and from their destinations, including, but not limited to airports, train stations and bus stations servicing interstate and/or international destinations, or (b) who drove within one state to pick up or transport passengers to and from airports, train stations and bus stations that service interstate and/or international destinations.

49.     Defendant is liable under the FLSA for, *inter alia*, failing to pay proper minimum wage and overtime wages and failing to reimburse business expenses to Plaintiff and other similarly situated employees.

50.     There are many similarly situated current and former Lyft drivers engaged in interstate commerce who have not been paid proper minimum wages, overtime wages and reimbursed their business expenses in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. Thus, notice should be sent to the Collective pursuant to 29 U.S.C. § 216(b).

51.     The similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

## NEW JERSEY CLASS ALLEGATIONS

52.     Plaintiff also sues on his own behalf and on behalf of the New Jersey Class, pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), defined as all current and former Lyft drivers in the state of New Jersey who during the relevant time period are or were classified as "independent contractors" and (a) who drove across state lines to pick up or transport passengers to and from their destinations, including, but not limited to airports, train stations and bus stations servicing interstate and/or international destinations, or (b) who drove within one state to pick up or transport passengers to and from airports, train stations and bus stations that service interstate and/or international destinations.

53.     Defendant violated the NJWHL and the regulations promulgated thereunder by failing to pay proper minimum wages to Plaintiff and other putative New Jersey Class Members, and required overtime wages to Plaintiff and other putative New Jersey Class Members.

54.     The New Jersey Class is so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, these similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

55.     Upon information and belief, there are more than 1000 members of the New Jersey Class.  Lyft is estimated to have not less than 20 percent of the ride-share market in New Jersey, which would translate into approximately 3,200 drivers. *See* https://www.theinformation.com/articles/where-lyft-gained-on-uber-and-where-it-didnt. However, that number is conservative given Lyft's recent claim in filings with the Securities and Exchange Commission that its market share has increased to 39 percent nationally. *See*

https://www.sec.gov/Archives/edgar/data/1759509/000119312519059849/d633517ds1.htm#toc6 33517_6

56.     There are questions of law and fact common to the members of the New Jersey Class that predominate over any questions solely affecting the individual members of the New Jersey Class.

57.     The critical question of law and fact common to Plaintiff and the New Jersey Class that will materially advance the litigation is whether Defendant is required by the NJWHL to pay Plaintiff and the New Jersey Class minimum wage and overtime wages at a rate of 1.5 times their regular hourly rate for hours worked in excess of forty (40) hours per week.

58.     Other questions of law and fact common to the New Jersey Class that will materially advance the litigation include, without limitation:

     a.     Whether Defendant employed Plaintiff and the New Jersey Class Members within the meaning of NJWHL;

     b.     The nature and extent of the class-wide injury and the appropriate measure of damages for the Class;

     c.     Whether Defendant failed to pay Plaintiff and the New Jersey Class the legally required minimum wage in violation of the NJWHL;

     d.     Whether Defendant failed to pay Plaintiff and the New Jersey Class overtime compensation for hours worked in excess of 40 hours per workweek, in violation of the NJWHL;

     e.     Whether Defendant failed to reimburse Plaintiff and the New Jersey Class for business-related expenses promised under the Company policy.

     f.     Whether the ruling of the New Jersey Department of Labor that Lyft drivers are employees of Lyft is determinative of collective and class members employment status under the doctrine of administrative collateral estoppel.

     g.     Whether Defendant is liable for all damage claimed by Plaintiff and the New Jersey Class, including, without limitation, compensatory and statutory damages, interest, costs and disbursements, and attorneys' fees.

59.     Plaintiff's claims are typical of the claims of the members of the New Jersey Class.

60.     Plaintiff has the same interests in this matter as all other members of the New Jersey Class.

61.     Plaintiff is an adequate class representative, is committed to pursuing this action and has retained competent counsel experienced in wage and hour law and class action litigation.

62.     Class certification of Plaintiff's NJWHL claim is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the New Jersey Class, making appropriate both declaratory and injunctive relief with respect to the New Jersey Class as a whole.  The members of the New Jersey Class are entitled to injunctive relief to end Lyft's common and uniform policy, pattern and/or practice of denying New Jersey Class Members the wages to which they are entitled.

63.     Class certification of Plaintiff's NJWHL claim is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the New Jersey Class predominate over questions affecting only individual members of the New Jersey Class, and because a class action is superior to other available methods for the fair and efficient adjudication of the litigation.

64.     Plaintiff knows of no difficulty that would be encountered in the management of this ligation that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION

### FAIR LABOR STANDARDS ACT: UNPAID MINIMUM WAGE, UNPAID OVERTIME WAGES AND UNREIMBURSED BUSINESS EXPENSES
(Brought on Behalf of Plaintiff and All Collective Action Members)

65.     Plaintiff, on behalf of himself and all Collective Action Members, repeats, reiterates and realleges each and every allegation of Paragraphs 1 through 64 as if they were set forth herein at length.

66.     At all relevant times, Defendant has been, and continues to be, an employer engaged in interstate commerce within the meaning of the FLSA, 29 § U.S.C. 206(a) and 207(a).

67.     Defendant formerly employed Plaintiff, and employed and/or continues to employ, each of the Collective Action Members, within the meaning of FLSA.

68.     Defendant has and continues to engage in a policy, pattern and/or practice of violating the FLSA, as detailed in this Complaint.

69.     Plaintiff has consented in writing to be party to this action, pursuant to 29 U.S.C. § 216(b).

70.     The overtime wage provisions set forth in 29 U.S.C. §§ 201, *et seq.*, apply to Defendant.

71.     At all relevant times and continuing to the present time, Defendant had a policy pattern and/or practice of failing to pay minimum wage and overtime compensation to its employee drivers misclassified as independent contractors.

72.     As a result of Defendant's willful failure to compensate its employees, including Plaintiff and the Collective Action Members, at minimum wage, and its willful failure to compensate Plaintiff and the Collective Members at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant has

violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq*., including 29 U.S.C. § § 207(a)(1) and 215(a).

73.     Because Defendant's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

74.     As a result of Defendant's FSLA violations, Plaintiff, on behalf of himself and the Collective Action Members, is entitled (a) to recover from Defendant their unpaid wages for all of the hours worked by them at minimum wage and at one and a half times the regular rate of pay as overtime compensation for all hours worked in excess of 40 hours per week, (b) to recover an additional, equal amount as liquidated damages, and (c) to recover their unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

**NEW JERSEY WAGE AND HOUR LAW: UNPAID MINIMUM WAGES, UNPAID OVERTIME WAGES; AND UNREIMBUTSED BUSINESS EXPENSES**
(Brought on Behalf of Plaintiff and All New Jersey Class Members)

75.     Plaintiff repeats, reiterates and realleges each and every allegation of Paragraphs 1 through 64, as if they were set forth herein.

76.     At all relevant times, Plaintiff and the New Jersey Class Members were employed by Defendant within the meaning of the NJWHL, and Defendant was an employer within the meaning of NJWHL.

77.     The overtime wage provision of the NJWHL and its supporting regulations apply to Defendant.

78.     Defendant willfully violated Plaintiff's  rights and the rights of the New Jersey Class Members by failing to pay them the legally required amount of minimum wage and

overtime compensation at rates not less than one and one-half times their regular rate of pay for all hours worked by them in excess of 40 hours in a workweek, in violation of the NJWHL and its regulations.

79.     Defendant knew and/or showed reckless disregard that its conduct was prohibited by the NJWHL.

80.     As a result of Defendant's willful violations of the NJWHL, Plaintiff and the New Jersey Class Members are entitled to recover from Defendant their unpaid wages, reasonable attorneys' fees and costs of the action and pre-judgment and post-judgment interest, including the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, reasonable attorneys' fees and costs and disbursements of this action, pursuant to N.J.S.A. §34:11-56a25.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, the Collective Action Members and the New Jersey Class Members are entitled to and pray for the following relief:

a)     Designation of this action as an FLSA collective action on behalf of Plaintiff and the Collective Action Class and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the Collective Action Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

b)     Certification of the New Jersey Class as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), and the appointment of Plaintiff and his counsel to represent the members of the New Jersey Class;

c)     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NJWHL;

d)     An injunction requiring Defendant to cease its unlawful practices under the FLSA and the NJWHL and to comply with the law;

e)   An award of unpaid wages at minimum wage after payment of work-related out-of-pocket expenses, and for all hours worked in excess of 40 in a workweek at a rate of one and one-half the regular rate of pay under the FLSA and the NJWHL;

f)   An award of liquated damages pursuant to 20 U.S.C. § 216;

g)   An award of liquidated damages pursuant to the New Jersey Wage Theft Act for NJWHL minimum wage and overtime violations;

h)   An award of damages representing the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

i)   An award of prejudgment and post-judgment interest;

j)   An award of costs and expenses of this action together with reasonable attorneys' fees; and

k)   Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify under penalty of perjury under the laws of the United States of America that to the best of my knowledge, this matter is not the subject to any other action pending in any court, or of any pending arbitration or administrative proceeding.  I understand that if the foregoing statement is willfully false, I am subject to punishment.

Dated:  November 21, 2019

**LAW OFFICE OF**
**ROOSEVELT N. NESMITH LLC**

By: s/Roosevelt N. Nesmith
     Roosevelt N. Nesmith

363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
Tel: (973) 259-6990
Fax: (866) 848-1368
*roosevelt@nesmithlaw.com*

Russell S. Warren, Jr., Esq.
**LAW OFFICES**
**OF RUSSELL S. WARREN, JR.**
473 Sylvan Avenue
Englewood Cliffs, NJ  07632
Tel. (201) 503-0773
Fax: (201) 503-0776
*mail@rwarrenlaw.com*

Catherine E. Anderson, Esq.
**GISKAN SOLOTAROFF & ANDERSON LLP**
90 Broad Street, 10th Floor
New York, NY 10004
Tel: (212) 847-8315
Fax: (646) 964-9620
*canderson@gslawny.com*

**THE MARKHAM LAW FIRM**
David R. Markham, Esq. (*pro hac vice forthcoming*)
750 B Street, Suite 1950
San Diego, California 92101
Tel: (619) 399-3995
Fax: (619) 615-2067
*dmarkham@markham-law.com*

*Attorneys for Plaintiff and the*
*Putative Collective and Class*