<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **RENIER GONZALEZ, individually and on behalf of all others similarly situated,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**LYFT, INC.**<br><br>    **Defendant.** | Civil Action No. 19-20569 (BRM) (JAD)<br><br>**REPORT AND RECOMMENDATION** |

<u>**JOSEPH A. DICKSON, U.S.M.J.**</u>

    This matter comes before the Court in connection with Defendant Lyft, Inc.'s ("Lyft") Motion to Compel Arbitration. (ECF No. 19). Pursuant to Federal Rule of Civil Procedure 78, the Court resolves Lyft's motion without oral argument. After carefully considering the parties' submissions, (ECF Nos. 19, 20, 26, 27, 28, 30),[1] and for good cause shown; and

---

[1] The Court has considered each of the parties' submissions in connection with Lyft's motion. The Court notes that Lyft filed its First Notice of Supplemental Authority without seeking leave of Court to do so. (*See generally* First Notice of Supplemental Authority, ECF No. 27). In his response, Plaintiff noted this and requested that the Court disregard Lyft's supplemental submission. (Pl. Resp. to First Notice of Supplemental Authority at 1-2, ECF No. 28). Lyft then replied and, rather than simply requesting such leave retroactively (which it did, eventually), Lyft first suggested that it was not required to do so, as Local Civil Rule 7.1(d)(6) only requires such leave for "sur-replies." (Lyft Supplemental Reply at 2, ECF No. 30). Lyft is mistaken. The upshot of Local Civil Rule 7.1(d)(6) is that there is no post-reply briefing absent leave of court. Parties are not entitled to infinite rounds of briefing as long as they avoid calling it a "sur-reply" "sur-sur reply", or the like. Moreover, the fact some judges in this District have, in the interest of efficiency and developing the most fulsome record possible, accepted notices of supplemental authority submitted without leave of court, that does not mean that they *have* to, or that all judges will. When parties submit additional briefing without leave of Court, they do so at their own peril.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

  **WHEREAS** Plaintiff Reinier Gonzalez commenced this action by filing a Complaint on November 21, 2019. (Compl., ECF No. 1). In his pleading, Plaintiff alleges that Lyft has misclassified its rideshare drivers as "independent contractors", and has violated the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and New Jersey state law by failing to pay those drivers the requisite minimum wages and overtime wages, and by refusing to reimburse them for business expenses. (*See generally id.*). With regard to his "minimum wage" claims, Plaintiff alleges that while Lyft pays its drivers at a rate above the hourly minimum wage, that wage actually dips below the legal minimum when you subtract the drivers' unreimbursed out-of-pocket expenses. (*Id.* ¶¶ 38-44). Plaintiff also alleges that Lyft failed to pay its drivers overtime wages when they worked in excess of 40 hours per week. (*Id.* ¶ 45). "Plaintiff seeks to prosecute his FLSA claim as a Collective Action", (*id.* ¶ 48), and his New Jersey state law claims as a class action. (*Id.* ¶¶ 52 -64); and

  **WHEREAS** on March 2, 2020, Lyft moved to compel Plaintiff to engage in individual arbitration. (ECF No. 19). Lyft argues that, in order to use the Lyft application to coordinate rides with passengers, Plaintiff and all other drivers must first agree to a Terms of Service Agreement. (Lyft Br. at 4, ECF No. 19-1 (citing Decl. of Suresh Pragada ("Pragada Decl.") ¶¶ 5-6, ECF No. 19-2)). For instance, Lyft represents that it updated its Terms of Service Agreement on August 26, 2019. (Pragada Decl. ¶ 7). "Subsequent to the update, registered Lyft users who opened the Lyft App were required to consent to the August 26, 2019 Terms of Service Agreement [("2019 TOS Agreement")], which automatically appeared on a screen in the Lyft App." (*Id.*). "Users presented with the [2019 TOS Agreement] had the opportunity to scroll all the way through the text of [that agreement] without leaving the screen." (*Id.* ¶ 8). The

pop-up screen also contained the following language, which users could see immediately without the need for scrolling:



(*Id.* ¶ 7). While this introductory section sets forth a general overview of the 2019 TOS Agreement's dispute resolution protocol, it also advises users to consult "Section 17" of that Agreement for more details. (*Id.*); and

**WHEREAS** Section 17 of the 2019 TOS Agreement, which spans 10 pages, provides in pertinent part: "YOU AND LYFT MUTUALLY AGREE TO WAIVE OUR RESPECTIVE RIGHTS TO RESOLUTION OF DISPUTES IN A COURT OF LAW BY A JUDGE OR JURY AND AGREE TO RESOLVE ANY DISPUTE BY ARBITRATION." (2019 TOS Agreement § 17(a), ECF No. 19-3) (capitalization in original). The provision states that it applies to "all Claims", and that "ALL DISPUTES AND CLAIMS BETWEEN US . . . SHALL BE EXCLUSIVELY RESOLVED BY BINDING ARBITRATION SOLELY BETWEEN YOU AND LYFT." (*Id.*) (capitalization in original). The 2019 TOS Agreement also provides, in pertinent part, that the "Claims" subject to arbitration:

> include, but are not limited to, any dispute, claim or controversy whether based on past, present, or future events, arising out of or relating to: . . . any city, county, state or federal wage-hour law . . . expense reimbursement . . . claims arising under the . . . Fair Labor Standards Act . . . and state statues, if any, addressing the same or similar subject matters, and all other federal and state statutory and common law claims.

(*Id.*). That Agreement further includes a section titled "Prohibition of Class Actions and Non-Individualized Relief", which states, in pertinent part:

> YOU UNDERSTAND AND AGREE THAT YOU AND LYFT MAY EACH BRING CLAIMS IN ARBITRATION AGAINST THE OTHER ONLY IN AN INDIVIDUAL CAPACITY AND NOT ON A CLASS, COLLECTIVE ACTION, OR REPRESENTATIVE BASIS ("CLASS ACTION WAIVER"). YOU UNDERSTAND AND AGREE THAT YOU AND LYFT BOTH ARE WAIVING THE RIGHT TO PURSUE OR HAVE A DISPUTE RESOLVED AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, COLLECTIVE OR REPRESENTATIVE PROCEEDING.

(*Id.* at § 17(b)) (capitalization in original); and

**WHEREAS** Lyft had previously updated its Terms of Service Agreement in February 2018 (the "2018 TOS Agreement"). (Decl. of Oluwabukunmi Ayanbule ¶¶ 1-4, ECF No. 19-4). Lyft represents that the arbitration provisions in the 2018 TOS Agreement and 2019 TOS Agreement are "identical in all material respects." (Lyft Br. at 7, n. 2, ECF No. 19-1). Plaintiff does not dispute that representation. (*See generally* Pl. Br., ECF No. 20); and

**WHEREAS** Lyft represents its records indicate that Plaintiff Gonzalez and potential opt-in Plaintiffs Bridget Hall and Laju Ogedengbe agreed to the terms of both the 2018 TOS Agreement and 2019 TOS Agreement. (Pragada Decl. ¶¶ 13-15); and

**WHEREAS** both the 2018 TOS Agreement and 2019 TOS Agreement contained a provision whereby drivers could "opt-out" of the requirement to arbitrate their claims "if [they] [had] not previously agreed to an arbitration provision in Lyft's Terms of Service where [they] had the opportunity to opt out of the requirement to arbitrate." (2019 TOS Agreement §17(j), ECF No. 19-3; 2018 TOS Agreement §17(j), ECF No. 19-5). Those provisions further stated, in pertinent part: "If you have previously agreed to such an arbitration provision, you may opt out of any revisions to your prior arbitration agreement made by this provision . . . but opting out of this arbitration provision has no effect on any previous, other, or future agreements that you may have with Lyft." (*Id.*). Both agreements also required drivers to take specific steps to provide Lyft with written notice of their opt-out decisions. (*Id.*). Lyft represents neither Plaintiff Gonzalez nor potential opt-in Plaintiff Hall opted out of the arbitration provisions in the 2018 TOS Agreement or 2019 TOS Agreement. (Decl. of Jeannie Lieu ¶¶ 6-9, ECF No. 19-7). Lyft further represents that while potential opt-in Plaintiff Ogedengbe did opt out of the arbitration

provision in the 2019 TOS Agreement, she did not do so with regard to the 2018 TOS Agreement. (*Id.* ¶¶ 10-12); and

**WHEREAS** Lyft argues that Plaintiff Gonzalez and potential opt-in Plaintiffs Hall and Ogedengbe are required to submit all of their claims in this case to binding arbitration on an individual basis, and that the Court must therefore compel them to do so in accordance with the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"). (*See generally*, Lyft Br., ECF No. 19-1). Plaintiff and the potential opt-in Plaintiffs argue that they are exempt from the FAA's coverage, pursuant to Section 1 of that statute, given their status as transportation workers who engage in interstate commerce. (*See generally* Pl. Br., ECF No. 20). Lyft contends that, in accordance with the relevant case law, the Section 1 exemption is both narrowly construed and inapplicable here. (Lyft Br. at 15-27, ECF No. 19-1); and

**LEGAL DISCUSSION**

**WHEREAS** the United States Court of Appeals for the Third Circuit has noted:

> In response to judicial hostility toward [arbitration agreements], Congress passed the [FAA]. The FAA places certain arbitration agreements on equal footing with all other contracts by requiring courts to enforce such agreements according to their terms. Section 2 provides that the FAA covers "a written provision in any maritime transaction or a contract evidencing a transaction involving commerce," *id.* § 2, but a provision in § 1 sets an outer limit, providing that "nothing" in the FAA "shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," *id.* § 1.

*Singh v. Uber Technologies Inc.*, 939 F.3d 210, 214 (3d Cir. 2019) (citations in original). In short, "§§ 1 and 2 of the FA identify the subset of arbitration agreements covered by the statute." *Id.* at 215. Courts refer to the "any other class of workers engaged in foreign or interstate commerce" language of Section 1 as the "residual clause." *Id.* at 214; and

**WHEREAS** the United States Supreme Court has held that, even when an arbitration agreement contains a "delegation clause" (i.e., language stating that an arbitrator shall decide whether disputes are arbitrable) courts, not arbitrators, "must be the ones to determine whether an agreement is excluded from FAA coverage" pursuant to Section 1's residual clause. *Id.* at 215 (citing *New Prime Inc. v. Oliveira*, ___ U.S. ___ 139 S.Ct. 532, 538, 202 L.Ed.2d 536 (2019)); and

**WHEREAS** taking the foregoing into account, the Court must determine: (1) whether the agreement in question may be considered a "contract of employment"; and (2) whether Plaintiff and the potential opt-in Plaintiffs fall into "any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. As there is no dispute regarding the former point, the Court will focus its analysis on the latter; and

**WHEREAS** the Third Circuit has found that "the residual clause of § 1 may extend to a class of transportation workers who transport passengers, so long as they are engaged in interstate commerce or in work so closely related thereto as to be in practical effect part of it." *Id.* at 214. The Third Circuit has also made clear that, when determining whether a group is "engaged in interstate commerce", courts must "look to classes of workers rather than particular workers." *(Id.* at 227); and

**WHEREAS** in its precedential opinion in *Singh*, the Third Circuit explained that the legal standard applicable on a motion to compel arbitration varies depending on the content of the complaint and the motion record:

> [W]here the issue of whether the residual clause of § 1 of the FAA applies arises in a motion to compel arbitration, the motion to dismiss standard applies if the complaint and incorporated documents provide a sufficient factual basis for deciding the issue. But where those documents do not, or the plaintiff responds to the motion with additional facts that place the issue in dispute, "the

> parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing . . .," with an application of the summary judgment standard to follow.

*Id.* at 218 (quoting *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013)). Considering the record before it, in which the parties had submitted competing affidavits concerning the issue of whether the plaintiff belonged to a class of workers engaged in interstate commerce, *id.* at 226-27, the *Singh* court determined:

> Since neither the Amended Complaint nor incorporated documents suffice for determining whether Singh belongs to a class of workers that are engaged in interstate commerce or sufficiently related work, we will ultimately remand for the District Court to examine the issue, with instruction to permit limited discovery before entertaining further briefing. If Uber chooses to reassert its motion after this discovery is completed, the District Court shall apply the summary judgment standard under Federal Rule of Civil Procedure 56 and decide only this aspect of the § 1 residual clause inquiry, which will be dispositive as to whether the FAA applies.

*Id.* at 219. The *Singh* court also remarked that the affidavits submitted in connection with Uber's motion to compel arbitration were "beyond the scope of what a court may consider at this stage." *Id.* at 227, n. 10; and

**WHEREAS** here, Plaintiff's Complaint does not resolve the question of whether he belongs to a class of workers engaged in interstate commerce. While Plaintiff alleges that he has personally engaged in interstate trips while working as a Lyft driver, (Compl. ¶ 10, ECF No. 1), the Court must focus on the class of workers as a whole, rather than any particular individual. *Singh*, 939 F.3d at 227. Plaintiff has also alleged, in conclusory terms, that "Plaintiff and others similarly situated were engaged in interstate commerce as Lyft drivers." (Compl. ¶ 19, ECF No. 1). The Court finds, however, that the Complaint does not contain factual allegations establishing that Lyft drivers, as a group, are engaged in interstate commerce; and

**WHEREAS** in support of its motion, Lyft does not limit its argument to the content of Plaintiff's Complaint, or any documents incorporated by reference therein. Instead, Lyft has submitted five different declarations from various employees. (ECF Nos. 19-2; 19-4; 19-6; 19-7; 26-1). Certain of those declarations bear on the interstate commerce issue. For instance, Lyft employee Ian Muir represented that "approximately 1.98% of completed rides on [the] Lyft Platform in the United States involved crossing state lines during the time period from November 21, 2016 to February 15, 2020." (Muir Decl. ¶ 5, ECF No. 19-6).[2] These declarations have injected new facts into the record, and the topics they cover have not yet been subject to any discovery. The Court cannot consider them at this juncture. *Singh*, 939 F.3d at 27, n. 10 (finding the affidavit Uber submitted in support of its motion to compel arbitration to be "beyond the scope of what a court may consider at this stage."). Per the Third Circuit's clear guidance in *Singh*, the District Court should deny Lyft's motion without prejudice, permit the parties to engage in limited discovery regarding whether Plaintiff belongs to a class of workers engaged in interstate commerce, and decide any renewed motion under the summary judgment standard. *Id.* at 219; and

**WHEREAS** the Court notes that Lyft agrees that the Court should apply the summary judgment standard when considering its application. (Lyft. Reply Br. at 12-15, ECF No. 26). Lyft argues, however, that the Court should resolve this motion immediately based on its employees' declarations, without giving Plaintiffs the opportunity to conduct discovery, as "plaintiffs have not offered ***any*** evidence in their opposition, nor explained, consistent with ordinary summary judgment practice, what additional evidence ***might be relevant***. Accordingly,

---

[2] In a supplemental Declaration, Mr. Muir represented that "2.05% of completed rides on Lyft Platform in the United States involved crossing state lines during the time period from February 15, 2019 to February 15, 2020. (Muir Suppl. Decl. ¶ 5, ECF No. 26-1).

the Court can and should rule on the basis of Lyft's undisputed evidence." (*Id.* at 15) (emphases in original). There are at least two fatal flaws in Lyft's argument. First, Lyft's position is directly contrary to the Third Circuit's holding in *Singh*, wherein the Court of Appeals rejected the idea of resolving a pre-discovery motion to compel arbitration based on party affidavits. *Singh*, 939 F.3d 227, n. 10. Lyft attempts to distinguish *Singh*, arguing that "the Third Circuit remanded with instructions to take discovery because there was **no** factual record there" regarding whether the plaintiff qualified for the Section 1 exemption. (Lyft Reply Br. at 14, ECF No. 26). That is not correct. As described herein, the *Singh* court acknowledged that both parties had submitted affidavits, but that they were beyond the scope of what the court could consider at that early stage of the case. *Singh*, 939 F.3d at 227. Second, Lyft's procedural argument – that Plaintiffs are not entitled to discovery because they did not follow the protocol dictated by Federal Rule of Civil Procedure 56 with regard to describing the information required to fairly counter Lyft's motion for summary judgment, (Lyft Reply Br. at 13-14, ECF No. 26), – is a nonstarter, given that Lyft did not file a motion for summary judgment under that Rule. Nor did Lyft comply with the requirements of Local Civil Rule 56.1, which apply to all motions for summary judgment filed in the District of New Jersey; and

  **WHEREAS** even if the Court were to consider Lyft's untested declarations, it would still be constrained to deny Lyft's motion at this point; and

  **WHEREAS** Lyft argues, in essence, that because only approximately 2% of the rides on its platform cross state lines, its drivers, as a group, are not "engaged in interstate commerce" within the meaning of Section 1 of the FAA. Lyft bases that position, in part, on its interpretation of the term "engaged." Following the Supreme Court's guidance that "words generally should be interpreted as taking their ordinary . . . meaning . . . at the time Congress

10

enacted the statute", *New Prime*, 139 S. Ct. at 539 (internal quotations and citations omitted), Lyft represents that, at the time of the FAA's adoption, "[t]o be 'engaged' in an activity meant to be 'occupied' or 'employed' at it." (Def. Br. at 15, ECF No. 19-1). In support of that point, Lyft cites to the first edition of Webster's New International Dictionary, published in 1909. (*Id.*). Having reviewed that publication, the Court finds that Lyft's summary is too narrow. First, the Dictionary provides "involved" as an alternate definition for the term "engaged." *Engaged*, *Webster's New International Dictionary* (1st ed. 1909). Second, in defining the term "engage", the Dictionary states, in pertinent part: "To embark in a business; to take a part; to employ or involve one's self; to devote attention and effort; to enlist". *Engage*, *Webster's New International Dictionary* (1st ed. 1909). While Lyft seems to suggest that the Court must read "engaged in" to include some minimum threshold level of activity (e.g., the focal point of one's job), the definition it cites is not so limited. Without that implicit limitation, Lyft's position on the "engaged in interstate commerce" issue would require the Court to read additional terms into Section 1 of the FAA. The statute does not say "engaged exclusively", "engaged primarily", "engaged routinely", or even "engaged in a lot of" interstate commerce. Congress could have inserted any number of modifiers intended to express a baseline amount of activity necessary to trigger the Section 1 exemption. It did not. The Court would decline to add them now, absent binding precedent to the contrary;

    **IT IS** on this 13th day of October, 2020,

    **RECOMMENDED** that District Court **DENY** Lyft's motion to compel arbitration. (ECF No. 19).

s/ Joseph A. Dickson<br>JOSEPH A. DICKSON, U.S.M.J.

cc:    Honorable Brian R. Martinotti, U.S.D.J.