**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RENIER GONZALEZ, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. 2:19-cv-20569-BRM-JAD |
| LYFT, INC. | |
| Defendant. | **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Report and Recommendation (ECF No. 32) by Magistrate Judge Joseph A. Dickson filed on October 13, 2020, recommending Defendant Lyft, Inc.'s ("Lyft") Motion to Compel Arbitration (ECF No. 19) be denied. Lyft filed an Objection (ECF No. 33), and Plaintiffs Renier Gonzalez, and Opt-In Plaintiffs Bridgette Hall and Laju Ogedengbe (collectively, "Plaintiffs") filed a Reply (ECF No. 36). Having reviewed the parties' submissions filed in connection with the Report and Recommendation and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Judge Dickson's Report and Recommendation (ECF No. 32) is **ADOPTED**, and Lyft's Motion to Compel Arbitration (ECF No. 19) is **DENIED**.

### I.     BACKGROUND

The factual details of this dispute are explained in detail in the Report and Recommendation (ECF No. 32), which the Court incorporates by reference. The relevant procedural history is summarized as follows.

Reinier Gonzalez commenced a putative collective and class action on behalf of the rideshare drivers using Lyft's online platform with a Complaint filed on November 21, 2019, which alleged Lyft violated the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., and New Jersey wage and hour laws, by refusing pay minimum wages, overtime wages, and reimbursement for business expenses to Plaintiffs. (ECF No. 1.) On March 2, 2020, Lyft moved to compel Plaintiffs to engage in individual arbitrations, based on an arbitration provision in the Terms of Service Agreement (the "Agreement") that Plaintiffs allegedly entered into with Lyft. (ECF No. 19.) On April 16, 2020, Plaintiffs opposed Lyft's Motion to Compel Arbitration. (ECF No. 20.) On May 26, 2020, Lyft filed a Reply in support of its Motion to Compel Arbitration. (ECF No. 26.)

On October 13, 2020, Judge Dickson issued a Report and Recommendation, which recommended denying Lyft's Motion to Compel Arbitration and conducting a limited discovery regarding whether Plaintiffs are exempt from the coverage of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA") pursuant to Section 1 of the FAA ("Section 1"). (ECF No. 19.) On October 27, 2020, Lyft filed an Objection to Judge Dickson's Report and Recommendation pursuant to Federal Rule of Civil Procedure 72 and Local Civil Rule 72.1(c)(2). (ECF No. 33.) On November 16, 2020, Plaintiffs filed a Reply. (ECF No. 36.)

## II.  LEGAL STANDARD

"The product of a magistrate judge, following a referral of a dispositive matter, is often called a 'report and recommendation.'" *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017). Parties may file specific written objections to the proposed findings and recommendations within 14 days of being served with a copy of the magistrate judge's report and recommendation. Fed. R. Civ. P. 72(b)(2); L. Civ. R. 72.1(c)(2). If a party timely filed an objection, the district

court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). After so doing, a judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1)(C). A district court will adopt the unobjected portion of a report and recommendation if "there is no clear error on the face of the record." *United States ex rel. Bahnsen*, No. 11-1210, 2021 U.S. Dist. LEXIS 6674, at *6 (D.N.J. Jan. 11, 2021) (citing *Sportscare of Am., P.C. v. Multiplan, Inc.*, No. 10-4414, 2011 WL 500195, at *1 (D.N.J. Feb. 10, 2011)).

### III. DECISION

The Court begins with a brief introduction of the FAA's coverage. The FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. A party to a "written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "[T]he central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (citations omitted). However, under Section 1, the FAA does not apply to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

Here, the parties dispute whether the rideshare drivers using Lyft's online platform qualify as "other class of workers engaged in foreign or interstate commerce" under Section 1. If so, the Agreement would be exempted from the FAA's coverage, and Lyft would be unable to

compel arbitration.

### A. The Court Agrees with Judge Dickson's Construction of Section 1

Lyft insists Plaintiffs are not members of "other class of workers engaged in foreign or interstate commerce" under Section 1. (ECF No. 33 at 15.) Lyft argues Judge Dickson erred in construing the term "engaged in [interstate] commerce" in Section 1 to have the same breadth as "involving [interstate] commerce" in Section 2 of the FAA, because the Section 1 exemption requires a "narrow construction" and "has a more limited reach" than Section 2. (*Id*. at 15–16 (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 117–18 (2001)).) Lyft contends Judge Dickson also erred in concluding there is no minimum threshold level of interstate activity necessary to qualify as being "engaged in foreign or interstate commerce" under Section 1. (*Id*.) Lyft maintains the "other class of workers" under Section 1 are only those "whose work typically consists of transportation across state lines." (*Id*. at 16 (citing *Rogers v. Lyft, Inc.*, 452 F. Supp. 3d 904, 915 (N.D. Cal. 2020)).) Lyft states the residual category of "other class of workers" must be controlled and defined by reference to the enumerated categories of workers (i.e., seamen and railroad employees) recited right before it (*id*. at 17 (citing *Circuit City*, 532 U.S. at 115)), and must be those whose work is "akin to 'seamen' and 'railroad employees'" and centered on "interstate movement" (*id*. at 17–18 (citing *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 801 (7th Cir. 2020))). Lyft stresses, with only approximately 2% of the rides on its platform crossing state lines, Plaintiffs' rides are predominantly local and intrastate, and do not qualify as interstate commerce. (*Id*. at 7, 18–19 (citing *Rogers*, 452 F. Supp. 3d at 916; *Capriole v. Uber Techs., Inc.*, 2020 WL 2563276, at *7 (N.D. Cal. May 14, 2020); *Grice v. Uber Techs., Inc.*, 2020 WL 497487, at *8 (C.D. Cal. Jan. 7, 2020)).) Plaintiffs counter the disposition of Lyft's motion is controlled by *Singh*, which found the Uber drivers were members of a class of workers

engaged in interstate commerce under Section 1. (ECF No. 36 at 4–5 (citing *Singh v. Uber Technologies, Inc.*, 939 F.3d 210, 226–27 (3d Cir. 2019)).) Plaintiffs argue *Singh* is consistent with the narrow reading of "engaged in commerce" in *Circuit City*. (*Id.* at 7.) Plaintiffs maintain Judge Dickson did not base his construction of Section 1 on finding a substantially equivalent meaning between "involving" and "engaged" as the two terms appear in the FAA. (*Id.* at 10.) Plaintiffs point out the cases on which Lyft for its argument that interstate movement must be predominant in Plaintiffs' work are not binding in the Third Circuit, and are mostly factually distinguished from *Singh* and the present case. (*Id.* at 12–13.) The Court agrees.

First, Judge Dickson did not find the word "engaged" in Section 1 to have the same broad meaning as the word "involving" in Section 2. Instead, Judge Dickson rejected Lyft's interpretation of the word "engaged"[1] as too restricted, by *observing* that the dictionary definition cited by Lyft in support of its interpretation "provided 'involved' as an alternate definition for the term 'engaged.'" (ECF No. 32 at 11.) But this does not mean Judge Dickson actually adopted that dictionary definition in construing Section 1.

Second, Judge Dickson's construction of Section 1 does not conflict with the "narrow construction" under *Circuit City*. *Circuit City Stores v. Adams*, 532 U.S. 105, 118 (2001). On the one hand, *Circuit City* rejected "an expansive construction of the FAA's exclusion provision" that expanded the application of Section 1 "to all employment contracts," and held "Section 1 exempts from the FAA only contracts of employment of transportation workers." *Id.* at 119. But *Circuit City* never construed the phrase "engaged in interstate commerce" to require a certain minimum threshold level of interstate commerce, or indicate an exclusive, primary, or routine engagement in interstate commerce. On the other hand, *Circuit City* notes "[m]ost Courts of

---

[1] Lyft's interpretation is that to be "engaged" in an activity means to be "occupied" or "employed" at it. (ECF No. 19-1 at 22.)

Appeals conclude the exclusion provision is limited to transportation workers . . . 'actually engaged in the movement of goods in interstate commerce.'" *Id*. at 112. However, this "merely illustrates a circuit split." *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 223 (3d Cir. 2019). *Circuit City* did not construe "other class of workers" under Section 1 as limited to the workers transporting goods.

Third, the binding precedents in the Third Circuit support Judge Dickson's construction. Section 1 "may extend to a class of transportation workers who transport passengers, so long as they are engaged in interstate commerce or in work so closely related thereto as to be in practical effect part of it." *Singh*, 939 F.3d at 214. The term "contract of employment" under Section 1 "includes more than employment contracts in the modern, strict sense." *Id.* at 222 (citing *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019)). The *Singh* court declined to conclude the work performed by Uber drivers who "cross[ed] state lines from time to time" was "inherently local" based on "a general knowledge about these drivers." *Id.* at 227. Instead, the *Singh* court remanded to the District Court to determine whether Uber drivers qualify as "other classes of workers" under Section 1 by examining "various factors," "including, but not limited to . . . the contents of the parties' agreement(s), information regarding the industry in which the class of workers is engaged, information regarding the work performed by those workers, and various texts—i.e., other laws, dictionaries, and documents—that discuss the parties and the work." *Id.* at 227–28. Among these various factors, "no single factor is dispositive of" the determination of the Section 1 exemption, "such as . . . the 'localized nature' of the work in dispute." *Harper v. Amazon.com Servs.*, No. 19-21735, 2020 U.S. Dist. LEXIS 133238, at *13 (D.N.J. July 28, 2020) (citing *Singh*, 939 F.3d at 227). Therefore, various factors could inform the determination of whether Plaintiffs, whose work is similar to Uber drivers in that both use a common online

platform to transport passengers, belong to a class of transportation workers engaged in interstate commerce under Section 1. The alleged localized nature of Plaintiffs' work is not dispositive. Accordingly, Judge Dickson did not err in declining to require a certain minimum threshold level of interstate activity for triggering Section 1.

Finally, Lyft cited a number of cases[2] for its proposition that, to trigger Section 1, interstate movement must be the predominant and central part of Plaintiffs' work. (ECF No. 33 at 18–19.) But none of them is a Third Circuit case. As a result, the Court declines to follow these non-binding cases.

Therefore, the Court agrees with Judge Dickson's construction of Section 1.

### B.   Plaintiffs Are Entitled to Limited Discovery

Lyft objects to Judge Dickson's reliance on *Singh* to mandate discovery whenever a plaintiff invokes the Section 1 exemption and reject resolving a pre-discovery motion to compel arbitration based on the parties' affidavits. (ECF No. 33 at 24.) Lyft contends it has already introduced information associated with the "various factors" in *Singh* bearing on the determination of the Section 1 exemption, but that Plaintiffs failed to meet the burden of showing the Section 1 exemption applies by articulating the need for discovery. (*Id*. at 25–27.) Lyft also objects to Judge Dickson's conclusion that the rules governing ordinary summary judgment practice were irrelevant. (*Id*. at 27.) Lyft explains, though Plaintiffs have not moved for summary judgment, *Guidotti* suggests the motion to compel arbitration and accompanying proof should be judged under the Rule 56 standard. (*Id*. (*Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 774 (3d Cir. 2013)).) Lyft maintains Plaintiffs must submit something similar to a Rule

---

[2] *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798 (7th Cir. 2020); *Capriole v. Uber Techs., Inc.*, 2020 WL 2563276 (N.D. Cal. May 14, 2020); *Heller v. Rasier, LLC*, 2020 WL 413243 (C.D. Cal. Jan. 7, 2020); *Grice v. Uber Techs., Inc.*, 2020 WL 497487 (C.D. Cal. Jan. 7, 2020); *Hill v. Rent-A-Ctr., Inc.*, 398 F.3d 1286 (11th Cir. 2005).

56(d) affidavit or declaration describing the nature and extent of discovery that they believed was necessary to resist Lyft's arbitration motion. (*Id*. at 33.) Plaintiffs state discovery cannot be triggered merely by invoking the Section 1 exemption, because a defendant may still challenge a plaintiff's complaint under Rule 12(b)(6), which requires a plaintiff to set forth sufficient facts to state a claim for relief plausible on its face. (ECF No. 36 at 8.) Plaintiffs argue, under *Singh*, they need not come forward with evidence beyond the well-plead allegations in the Complaint. (*Id*. at 9 (citing *Singh*, 939 F.3d at 216, 226 n.10).) The Court agrees.

First, Judge Dickson did not consider the Rule 56 standard as irrelevant here. Instead, Judge Dickson rejected Lyft's argument that Plaintiffs "are not entitled to discovery because they did not follow the protocol dictated by Federal Rule of Civil Procedure 56 with regard to describing the information required to fairly counter Lyft's motion for summary judgment." (ECF No. 32 at 10.) In essence, Judge Dickson only declined to impose the procedural requirements (similar to those) under Rule 56(d), which the Court agrees.

Rule 56(d) requires "a party seeking *further* discovery in response to a summary judgment motion [to] submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Smith v. DePuy Orthopaedics, Inc.*, 552 F. App'x. 192, 195 (3d Cir. 2014) (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 139–40 (3d Cir. 1988)). However, as the following analysis shows, a party need not follow Rule 56(d) to initiate discovery, even if the opposing party has filed a motion for summary judgement.

A court "is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (citing *Dowling v. City of Phila.*, 855 F.2d 136, 139 (3d Cir. 1988)). Rule 56(d) simply allows the court

to respond to a Rule 56(d) affidavit or declaration by allowing *additional* time to take discovery. *Shelton v. Bledsoe*, 775 F.3d 554, 567 (3d Cir. 2015) (citing Fed. R. Civ. P. 56(d)); *LaBarre v. Bristol-Myers Squibb Co.*, 544 F. App'x. 120, 123 (3d Cir. 2013) (citations omitted). Rule 56(d) "permits a court to deny a motion for summary judgment when discovery is *still ongoing*." *Smith v. Director's Choice, LLP*, No. 15-81, 2018 U.S. Dist. LEXIS 49995, at *12–13 (D.N.J. March 26, 2018) (citations omitted).

Here, Lyft analogized its Motion to Compel Arbitration to a motion for summary judgment in requesting the procedures similar to those under Rule 56(d) to be followed. (ECF No. 33 at 27.) Since Rule 56(d) need not be followed to *initiate* discovery in opposing a motion for summary judgment, there is no reason to adopt a similar rule in opposing a motion to compel arbitration.

Second, discovery is warranted here even if Lyft has introduced information associated with the "various factors" in *Singh*, because Plaintiffs have introduced facts that place the issue of arbitrability in dispute. Plaintiffs need to do nothing more, such as articulating the need for discovery, to be entitled to discovery.

"[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (citing *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 479 (E.D. Pa. 2011)). However, "when either 'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a

'naked assertion . . . that it did not intend to be bound' by the arbitration agreement, . . . the Rule 12(b)(6) standard is no longer appropriate, and the issue should be judged under the Rule 56 standard." *Id*. at 774 (citations omitted). "Under either of those scenarios, . . . the non-movant 'must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity' of the arbitration agreement." *Id*. (citations omitted); *see also Beacon Sales Acquisition, Inc. v. Bd. of Trs. of the Teamsters Indus. Emples. Pension Fund*, 425 F. Supp. 3d 377, 386 (D.N.J. 2019) ("[W]here the complaint and supporting documents are unclear as to an agreement to arbitrate, or where a plaintiff responds to a motion to compel with additional facts sufficient to place the issue of arbitrability 'in issue,' then the parties should be entitled to discovery.").

Here, "either of those scenarios" that triggers the Rule 56 standard exists. *See Guidotti*, 716 F.3d at 774. On the one hand, Plaintiffs' Complaint refers to some interstate travels undertaken during Plaintiffs' work, which raises the possibility that Section 1 is triggered. (ECF No. 1 at ¶¶ 10, 19.) In other words, the Complaint, without specifying the proportion or amount of interstate travel in Plaintiffs' work, does not on its face preclude the application of Section 1. This is because, even if meeting a minimum threshold level of interstate activity is highly relevant (but not dispositive, as discussed in Part III.A, *supra*) in the Section 1 exemption inquiry, the Complaint does not show on its face Plaintiffs cannot meet a certain minimum threshold level. That is to say, the Court is unable to conclude on the issue of arbitrability at this stage. On the other hand, in opposing Lyft's Motion to Compel Arbitration, Plaintiffs specifically described the interstate travels undertaken by Plaintiffs and under Lyft's authorization. (ECF No. 20 at 9, 20–21.) As a result, Plaintiffs have presented facts, which Lyft does not dispute, sufficient to place the issue of arbitrability in issue. Accordingly, the Rule 56 standard applies, and discovery is warranted.

In conclusion, Plaintiffs are entitled to a limited discovery regarding whether Plaintiffs belong to a class of workers engaged in interstate commerce under Section 1.

### C. The Court Declines to Review Issues Unaddressed in the Report and Recommendation

Lyft maintains, if the Court determines re-briefing a motion to compel arbitration after additional discovery is warranted, the Court at this stage should resolve certain legal disputes the parties have already raised, in order to provide appropriate guidance. (ECF No. 33 at 28.) Lyft refers to three such legal disputes: (1) whether the relevant "class of workers" for Section 1 purposes should be defined on a nationwide basis; (2) whether intrastate rides to and from airports or rail and bus stations are irrelevant as a matter of law to the Section 1 inquiry; and (3) whether the Section 1 inquiry should focus on the percentage or absolute amount of interstate travel in Plaintiffs' work. (*Id.* at 28–29.) The Court declines to address these legal disputes for this review, as they were not addressed in Judge Dickson's Report and Recommendation. *See Amfosakyi v. Frito Lay*, 2012 U.S. Dist. LEXIS 36507, at *10 (E.D. Pa. March 19, 2012) ("[T]he Court is limited to reviewing the proposed findings and recommendations included in [the Magistrate Judge's] report."); *see also Christopher v. Reaching Fourth Ministries*, 2019 U.S. Dist. LEXIS 74145, at *3 (E.D. Tex. May 2, 2019) ("[T]o the extent Plaintiff argues that the statute of limitations should be tolled for his conversion and negligence claims, that issue was not included in the Report and Recommendation and is not currently before the Court."); *Cobarobio v. Midland Cty.*, 2015 U.S. Dist. LEXIS 193948, at *57 (W.D. Tex. Jan. 7, 2015) ("Plaintiff's first objection is to something . . . not included in the Report and Recommendation of the Magistrate Judge and will, therefore, not be dealt with in this section of the Court's *de novo* review as it in no way pertains to the Magistrate Judge's Report and Recommendation and this Objection is denied as moot."). The Court may decide these legal disputes if they arise

during discovery.

## IV. CONCLUSION

For the reasons set forth above, and having considered Lyft's Objection (ECF No. 33), Judge Dickson's Report and Recommendation (ECF No. 32) is **ADOPTED**, and Lyft's Motion to Compel Arbitration (ECF No. 19) is **DENIED**.

**Date: January 29, 2021**                                  */s/ Brian R. Martinotti*
                                                            **HON. BRIAN R. MARTINOTTI**
                                                            **UNITED STATES DISTRICT JUDGE**